## CREAGER v ANDERSON, Rec, et, Etc

Ohio Appeals, 3rd Dist, Union Co

No 149. Decided Jan 31, 1934

Hover and Smith, for plaintiff in error.
C. A. Hoopes, Marysville, Robert F. Allen, Richwood, and Gwynn Sanders, Marysville, for defendants in error.

**OPINION**

By GUERNSEY, J.

Under the record in this case, the sole question other than the validity of the court's order with reference to the manner of sale of said parcels of real estate and the distribution of funds arising from such sale, to be decided by this court, is: Whether the failure of the plaintiff in error, Harry Creager, to have the assignment of the Hoover mortgage to him recorded until after the execution and recording of the mortgage to the bank, bars the said Creager from claiming priority of his mortgage over that given to the bank.

In order to determine this question, it is necessary to consider the provisions of the General Code of Ohio with reference to the recording of mortgages and other instruments of conveyance, which appear in Title VIII, Chapter I of the General Code, and are as follows:

"Sec 8542 GC. All mortgages, executed agreeably to the provisions of this chapter, shall be recorded in the office of the recorder of the county in which the mortgaged premises are situated, and take effect from the time they are delivered to the

recorder of the proper county for record. If two or more mortgages are presented for record on the same day they shall take effect from the order of presentation for record. The first presented must be the first recorded, and the first recorded shall have preference. ( R. S. §4133).

"Sec 8543 GC. All other deeds and instruments of writing for the conveyance or incumbrance of lands, tenements, or hereditaments, executed agreeably to the provisions of this chapter, shall be recorded in the office of the recorder of the county in which the premises are situated, and until so recorded or filed for record, they shall be deemed fraudulent, so far as relates to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of such former deed or instrument. (R. S. 4134).

"Sec 8546-3 GC. A mortgage may be assigned or partially released by the holder thereof, by writing such assignment or partial release on the original mortgage, or upon the margin of the record thereof, and signing the same. Such assignment or partial release need not be acknowledged or witnessed, but if written upon the margin of the record the signing thereof must be attested by the county recorder. Such assignment, whether it be upon the mortgage, or upon the margin of the record thereof, or by separate instrument shall have the effect of transferring not only the lien of said mortgage, but also all interest in the land described therein. For entering such assignment or partial release upon the margin of the record, or for attesting the same, the county recorder shall be entitled to the same fee as is provided in §8549 GC, (112 V. 6 Effective June 6th, 1927).

"Sec 8546-4 GC. A mortgage may also be assigned or partially released by a separate instrument of assignment or partial release, duly acknowledged and witnessed as is provided for deeds and other instruments for the transfer of an interest in real estate. Such separate instrument of assignment or partial release shall be recorded in the book provided by §8547 GC for the recording of satisfactions of mortgages, and the recorder shall be entitled to charge the same fee for recording such separate instruments of assignment and partial release as is provided by said §8547 GC. (112 V. 6. Eff. June 6th, 1927)."

It will be noted from a review of these sections that it is expressly provided that mortgages take effect from the time they are delivered to the recorder of the proper county for record, but that there is no limitation on the taking effect of all other deeds and instruments of writing for a conveyance or incumbrance of lands, tenements or hereditaments, except that until recorded or filed for record, they shall be deemed fraudulent, so far as relates to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of such former deed or instrument.

It was held in **Compton v Tyler, 13 Nisi Prius (N.S.) 441, 24 Decisions, 511,** that the assignment of a mortgage falls within the category of an instrument in writing for the incumbrance of lands and is subject to the provisions of §8543 GC.

Since the enactment of §8546-3 GC, which became effective June 6, 1927, it would appear that an assignment of a mortgage unquestionably comes within the purview of §8543 GC, as §8546 GC expressly provides that an assignment of a mortgage written upon the mortgage shall have the effect of transferring not only the lien of said mortgage, but also all interest in the land described therein.

As an assignment of a mortgage comes within the purview of §8543, GC, it is necessary to determine as to what constitutes "a subsequent bona fide purchaser."

It is stated in Pomeroy's Equity Jurisprudence, Fourth Edition, Volume 2, page 1564, that:

"In order to obtain the benefit of the first recording, the subsequent purchase or incumbrance must be for a valuable consideration within the meaning of the general doctrine. Although the subsequent purchaser or encumbrancer had no notice of the unrecorded instrument, still, if he had not paid a valuable consideration he would not gain any superior title or lien by his earlier registration."

And on page 1526 of the same volume, it is said that:

"The essential elements which constitute a bona fide purchaser are therefore three,— a valuable consideration, the absence of notice, and the presence of good faith."

And on page 1527:

"Valuable consideration means, and necessarily requires under every form and kind of purchase, something of actual value, capable, in the estimation of the law of pecuniary measurement—parting with money or money's worth, or an actual change of the purchaser's legal position for the worse."

And on page 1532 of the same volume, the rule is laid down that:

"A conveyance of real or personal property as security for an antecedent debt does not, upon principle, render the transferee a bona fide purchaser, since the creditor parts with no value, surrenders no right, and places himself in no worse legal position than before."

From a consideration of these authorities it is clear that §8543 GC is either an adoption or restatement of the equitable rules relating to the effect to be given to unrecorded deeds and instruments of writing, other than mortgages, for the conveyance or incumbrance of lands, tenements or hereditaments.

While an assignment of a mortgage comes within the purview of §8543 GC, it is clear that under the above authorities the bank and Beeney were not subsequent bona fide purchasers within the meaning of the statute, and that the failure to record the assignment of mortgage was not fraudulent as to them. The mortgage to the bank was a conveyance of real property as security for antecedent debts owing to the bank and to Beeney. Neither the bank nor Beeney parted with any value, surrendered any right or placed itself or himself in a worse legal position than before.

It has been contended by the defendants in error that Creager is estopped from asserting his right under the unrecorded assignment of the mortgage.

It was held in the case of **Emaline Williams v Queen City Homestead Company, 9 O.C.C. (N.S.) at page 136,** that:

"A record of an assignment of a mortgage is not required by §4135 Revised Statutes (now §8546, GC) in order to give the mortgage priority over subsequent liens."

The decision in that case was affirmed by the Supreme Court in **79 Oh St, at page 442.** Under this decision it is clear that Creager's title to the mortgage assigned by Hoover to him, was complete although the assignment which he had received had not been recorded. Consequently it is only necessary to determine whether the execution and delivery by Hoover and the Davises to the bank, of their mortgage on the tract owned by the Davises and the tract owned by Hoover, had the effect of releasing the assigned mortgage held by Creager, or estopping Creager from asserting the same as against the bank and the defendant Beeney.

The general rule is that a person can contract only as to such property as he owns. Following this general rule it would appear that as Hoover did not own the mortgage which he had assigned to Creager at the time of the execution and delivery of the mortgage to the bank, he could not, in his own right, release the mortgage or transfer or incumber the interest he formerly held as mortgagee under such mortgage, and consequently unless some element of equitable estoppel enter into the transaction, Creager still holds every right he ever had in the mortgage, with the right to enforce the same.

In Pomeroy's Equity Jurisprudence, Second Edition, Volume 2, page 115, it is stated that:

"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both in law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, or contract, or of remedy as against another person who has in good faith relied upon such conduct and has been led thereby to change his decision for the worse, and who on his part acquired some corresponding right, either of property, of contract or of remedy."

It will be noted that a person is estopped from asserting his right only as against another person who has in good faith relied upon such conduct and has been led thereby to change his position for the worse.

To determine whether Creager is estopped in the present case from asserting his rights as against the bank and Beeney, it is necessary to inquire as to whether either the bank or Beeney were, by the failure of Creager to record his assignment of the mortgage, led thereby to change their position for the worse.

The consideration for the mortgage to the bank was past due indebtedness of the Davises and Hoover to the bank and Beeney. The indebtedness to the bank and Beeney still exists, evidenced by the note secured by the mortgage, the form being changed from unsecured obligations to secured obligations. The consideration for the mortgage being past indebtedness, neither the bank nor Beeney can claim as bona fide purchasers for value. By taking the mortgage, both the bank and Beeney bettered their positions rather than making them worse, as they procured security for their debts. They are only entitled to secure the property of the debtors as their security, and cannot claim that because they did not secure, in addition to the property of the

debtors, the property of Harry Creager, that they have in any way changed their position for the worse in the transaction.

Under the facts in this case it does not make any difference whether the bank and/or Beeney had notice of the assignment of the mortgage from Hoover to Creager. They received all they were entitled to receive under the mortgage, which was the security of the debtors property, and were not prejudiced in any way by the failure of Creager to record his assignment.

The cases cited by defendants in error in their brief are cases in which either the person in whose favor estoppel was held to exist, was a grantee or mortgagee for present value, or cases in which the record holder of the mortgage was served with summons in a foreclosure proceeding and the holder of the unrecorded assignment failed to intervene before judgment and decree of foreclosure taken and sale and confirmation had, and consequently the decisions in such cases do not apply to the facts in this case.

The fact that the bank took judgment on its note and had levy made on the mortgaged premises, does not in any way affect the rights of Creager under his mortgage assignment, as the lien of the mortgage attached to the premises long before the levy was made.

Creager had the legal right to protect his mortgage indebtedness by bidding on the property covered by his mortgage, and consequently is entitled to have the amount of his bid, for the purposes of distribution, considered as the amount for which said premises sold.

Holding the views we have expressed, the judgment of the lower court will be reversed at the costs of defendants in error and the cause remanded to the lower court with instructions to find and decree the amount owing on the mortgage held by Creager, and that the mortgage lien of Creager securing such amount, is the first and best lien on the tract covered thereby and superior to the liens of The First National Bank of Richwood, Ohio, and Frank Beeney thereon; and that for the purposes of distribution, said tract shall be considered as selling for the sum of $1275, being the amount the said Creager bid therefor; and that the taxes on said tract be first paid out of the proceeds thereof, and that such portion of the costs be assessed against the proceeds of said tract as the proceeds thereof bear to the total proceeds from both tracts, and that distribution of the proceeds of said sale be made in accordance herewith.

CROW, PJ, and KLINGER, J, concur.